UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YAN YAN | : | CIVIL NO: 4:14-CV-01590 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| PENNSYLVANIA STATE | : | |
| UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

**I.  Introduction.**

The plaintiff, Yan Yan, attempted to obtain a PhD from Penn State University.  She brought two prior cases relating, at least in part, to her failure to obtain her PhD.  Now, in this case, her third in this Court, she primarily complains about the refusal of Penn State to hire her for jobs that require a PhD.  Because Yan has failed to allege facts from which it can reasonably be inferred that she was qualified for those positions, we recommend that her failure-to-hire claims be dismissed, and for the reasons set forth below, we recommend that her other claims be dismissed as well.

## II.  Background and Procedural History.

Yan  began this action by filing a complaint and an application for leave to proceed *in forma pauperis*, which we granted.  She later filed an amended complaint naming the following entities and individuals as defendants: (1) Pennsylvania State University (PSU); (2) Regina Vasilatos-Younken; (3) Harold Paz; (4) Leonard Jefferson; (5) Madlyn L. Hanes; and (6) Pennsylvania State University Brandywine Campus. *Doc. 41-1.*  Yan alleges the following facts in her amended complaint.

Yan is a female of Chinese origin, who is over 40 years old and allegedly disabled.  Her allegations concern events going as far back as 2002.

According to Yan, in 2002, she informed PSU of her pregnancy and she "was delayed one year for her research assistant position" at PSU while males were not "delayed" for the same position. *Doc. 41-1* at 2, ¶7.  More specifically, she alleges that, in 2002, she was denied lab work at PSU even though she qualified for lab-rotation jobs at Hershey Medical School.  She alleges that no male in the same situation was denied a lab-rotation job.  She further alleges that even after the birth of her child she was denied more than 20 labs assignments "for a year and two." *Id.* at 11, ¶75.  And she alleges that she "was keeping denying employment at Upenn afterward till now." *Id.* at 11, ¶78.  According to Yan, she had to send her

baby away and could not get her baby back "since Upenn assuming her baby would affect her employment." *Id.*

Despite Yan's allegation that she was denied lab positions and employment "till now," she goes on to allege other positions and employment that she held at PSU.  In fact, she alleges that she had two employment contracts with PSU: one for 2003 to 2009, and one for 2007 to 2012.

Yan alleges that, in 2005, she was harassed at Chiang Hui-Ling's lab, and she was retaliated against and terminated from the lab.

Yan alleges that, in 2007, Shi Yuguang and Leonard Jefferson wrongfully terminated her from a job.  She alleges that this termination was in retaliation and breached a six-year employment contract.  She also alleges that, in 2007, she was paid less than male colleagues.  More specifically, she alleges that she "was paid less than male colleagues (Post doc) at PSU in 2007 while [she] performed more than common core duties as male colleagues (Post doc) such as scientific research and published peer-review papers in 2007 to 2008." *Doc. 41-1* at 13, ¶14.  She further alleges that although she "composited research proposals for NIH grants fund application," she "was paid as pre-comprehensive exam graduate student salary, which is less than male colleagues who did the similar duties." *Id.* at 13, ¶15.

Yan alleges that beginning in 2007, Ho Li-Lun harassed her in the Cell Development Biology program, and he caused her a work-related injury in 2008. She more specifically describes her injury as consisting of multiple fractures of her right hand, which is her dominant hand.  She alleges that, in May of 2008, she "lost functions of injured hand on this job." *Doc. 41-1* at 9, ¶62.  According to Yan, she has been disabled ever since.  She also alleges that PSU has not hired her as a research assistant since then.  She further alleges that in 2008, Lai Zhi-Chun wrongfully terminated her employment and breached a five-year employment contract.

In January of 2013, Yan applied for a position as an Assistant Biology Professor at PSU's Brandywine Campus.  She alleges that she was qualified for the position because she had more than five years teaching experience, more than five years in Genetics and developmental biology research, she had contributed to National Institute of Health grants, and she authored or assisted in authoring numerous publications.  The position required a PhD in Cell Development Biology (CDB) or Genetics.  At one point, Yan alleges that "she had accomplished PhD in Genetics and in CDB since 2007." *Doc. 41-1* at 2, ¶9.  At another point, however, she alleges that she was denied positions because she lacked a PhD certificate and that the defendants damaged her by failing to grant her a PhD degree.  *Id.* at 14,

¶19.  She further alleges that she "was denied her qualified PhD degree . . . ." *Id.* at 10, ¶68.

Yan alleges that in May of 2014, defendant Madlyn L. Hanes, Vice President for Commonwealth Campuses and Dean of the University College, informed her that she was not the successful candidate for the Assistant Biology Professor position.  According to Yan, however, her qualifications were better than or equal to two males, both of whom are not of Chinese origin, are not disabled, and are younger than 40 years old, who were hired as tenure-track faculty at PSU. She alleges that she was denied that job and others "due to her lack of PhD certificate, which destroyed her academic careers." *Doc. 41-1* at 14, ¶19.  Yan alleges that the reason PSU gave for denying her the position is a pretext for discrimination.  According to Yan, in June of 2014, she applied for other faculty positions at PSU, and although she was qualified for the positions, she was not offered any of the positions.

Yan alleges that she filed complaints with the Pennsylvania Human Relations Commission (PHRC) in 2009 and 2013.  She also alleges that she has complained to PSU since 2004, and that she filed charges of discrimination against PSU in 2007, 2008, 2009, 2010, and 2014.  Further, she alleges that, in 2014, she filed a complaint against PSU for employment discrimination based on gender,

age, race/national origin, and disability with the PHRC and EEOC, and she was issued a right-to-sue letter.

The amended complaint contains 14 counts.  Count 1 is a Title VII claim against PSU on the basis of sex.  Count 2 is a Title VII claim and a Pennsylvania Human Relations Act (PHRA) claim against PSU for national origin discrimination.  Count 3 is a Title VII claim and a PHRA claim against PSU for retaliation.  Count 4 is an Age Discrimination in Employment Act (ADEA) and a PHRA claim against PSU.  Count 5 is an Americans with Disability Act (ADA) claim against PSU.  Count 6 is a 42 U.S.C. § 1983 claim against PSU and the individual defendants for retaliation in violation of the First Amendment.  Count 7 is a § 1983 claim against PSU and the individual defendants for gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Count 8 is a § 1983 claim against PSU and the individual defendants for national origin discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Count 9 is a § 1983 claim against PSU and the individual defendants for disability discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Count 10 is a § 1983 claim against PSU and the individual defendants for age discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Count 11 is claim against PSU under the Pregnancy Discrimination Act.  Count 12 is claim for personal injury under 18

U.S.C. § 2255.  Count 13 a claim against PSU for wrongful termination and breach of contract under 41 U.S.C. § 6503.  And Count 14 is a claim against PSU for violation of the Equal Pay Act.  As relief, Yan seeks on order from the Court requiring the defendants to offer her the positions she applied for and to refrain from further discrimination and retaliation against her as well as compensatory and punitive damages.

Defendants PSU and Penn State University Brandywine Campus filed a motion to dismiss the amended complaint and a brief in support of that motion.[1] Yan later filed a document, which we construed as her brief in opposition to the motion to dismiss. *See Docs.54 & 55*.  The moving defendants then filed a reply brief.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as

---

[1] Although the individual defendants have not been served and have not moved to dismiss the amended complaint, in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), in Section III.G of this Report and Recommendation, we consider whether the amended complaint states any claims upon which relief may be granted against the individual defendants, and we conclude that it does not.

true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556

U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must

contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint

must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain"

statement of a cause of action.


### B. Failure-to-Hire Claims.

The moving defendants contend that Yan does not state any failure-to-hire

claims upon which relief can be granted based on the their refusal to hire her as an

Assistant Biology Professor or for the other positions because she has not alleged

facts from which it can reasonably be inferred that she was qualified for those

positions.

To establish a prima facie case of discrimination under Title VII, the ADEA, the ADA, or the PHRA, a plaintiff must show, among other things, that she was qualified for the position at issue. *See Paradoa v. Philadelphia Hous. Auth.*, No. 14-3191, 2015 WL 1923654, at *2 (3d Cir. Apr. 29, 2015)(Title VII and PHRA race-discrimination claims); *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)(ADEA claim and Title VII gender discrimination claim); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)(ADA claim).

Here, Yan alleges that a PhD in Cell Development Biology or Genetics was a requirement for the Assistant Biology Professor position.  While she alleges that she was qualified for the position because she had more than five years teaching experience, more than five years in Genetics and developmental biology research, she had contributed to National Institute of Health grants, and she authored or assisted in authoring numerous publications, she does not allege that she actually has a PhD in either Cell Development Biology or Genetics.  Her allegations in that regard are muddled.  At one point, she alleges that "she had accomplished PhD in Genetics and in CDB since 2007." *Doc. 41-1* at 2, ¶9.  At another point, however, she alleges that she was denied positions because she lacked a PhD certificate and that the defendants damaged her by failing to grant her a PhD degree. *Id.* at 14, ¶19.  She further alleges that she "was denied her qualified PhD degree . . . ." *Id.* at 10, ¶68.  And she alleges that she was denied the Assistant Biology Professor job

and others "due to her lack of PhD certificate, which destroyed her academic careers." *Doc. 41-1* at 14, ¶19.

Construing the allegations in the light most favorable to Yan, as we must when considering a motion to dismiss, we nevertheless conclude that she has not alleged facts from which it can reasonably be inferred that she has a PhD in Cell Development Biology or Genetics.  While Yan alleges that she met the requirements for a PhD, she has not alleged that she actually has a PhD.[2]  And given that the Assistant Biology Professor job required a PhD, YanYan's allegations are not sufficient to allege that she was qualified for that position. Similarly, given her allegations that she was denied the others positions due to her lack of a PhD, she has also not alleged facts from which it could reasonably be inferred that she was qualified for those positions.  Thus, the amended complaint fails to state Title VII, ADEA, ADA, or PHRA failure-to-hire discrimination claims upon which relief can be granted.

---

[2] This is consistent with Yan's other cases.  *See Yan Yan v. Penn State Univ.*, 529 F. App'x 167, 169 (3d Cir. 2013)( "Yan's claims arise from her participation in, and ultimate termination from, a Ph.D. program in the Intercollege Graduate Program in Cell and Developmental Biology (CDB) at PSU.");  *Yan Yan v. Penn State Univ.*, No. 4:14-CV-01373, 2015 WL 3953205, at *3 (M.D. Pa. June 29, 2015)(construing Yan's claims as based on the denial of a PhD degree in Genetics).

Yan also presents a Title VII and a PHRA claim that she was not hired in retaliation for her earlier charges of discrimination.[3]  To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between her protected activity and the adverse employment action. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

Given that Yan alleges that the positions at issue required a PhD, that she did not have a PhD, and that she was denied the positions for that reason, Yan has not alleged facts from which it could reasonably be inferred that there was a causal connection between her earlier discrimination charges and the later failure to hire her.  Thus, the amended complaint fails to state a Title VII or a PHRA failure-to-hire retaliation claim upon which relief can be granted.

---

[3] The Title VII and PHRA retaliation claims are evaluated under the same standards. *See Thompson v. Kellogg's USA*, No. 14-4325, 2015 WL 4394749, at *3 (3d Cir. July 20, 2015).

In sum, the amended complaint fails to state any Title VII, ADEA, ADA, or the PHRA failure-to-hire claims (Counts 1 through 5 of the amended complaint) upon which relief can be granted.  In this regard, we note that although Yan titles Count 1 of her amended complaint as a hostile-environment claim, she does not allege anything regarding a hostile environment.  Rather, she alleges that she was denied employment while males were hired.  Thus, despite the title, Count 1 is really a failure-to-hire claim.  Similarly, although Yan titles Counts 4 and 5 as both wrongful termination and failure-to-hire claims,[4] her allegations with respect to those counts is that she was not hired while younger (Count 4) and nondisabled (Count 5) applicants were hired.  Here again despite the title, the claims are really only failure-to-hire claims.  And because, as discussed above, Yan has not alleged facts from which it could reasonably be inferred that she was qualified for the positions at issue, the amended complaint fails to state a claim upon which relief can be granted.[5]

---

[4]  Yan uses the title "Wrongly Termination and Fail to Employ," which we construe to mean wrongful termination and failure to hire.

[5]  Given that we have concluded that the amended complaint fails to state any Title VII, ADA, or ADEA failure-to-hire claims upon which relief can be granted on the basis that Yan has not alleges facts from which it could reasonably be inferred that she was qualified for the positions, we need not address the moving defendants argument that Yan failed to allege that she exhausted administrative remedies as to those claims.  We note, however, that Yan alleges that she filed complaints with the PHRC in 2009, 2010, 2013, that in 2014 she dual filed with the EEOC, and that she received a right-to-sue letter. *Doc. 41-1* at 2-3, ¶¶4 & 12.

In addition to Title VII, ADEA, ADA, and PHRA failure-to-hire claims, Yan presents failure-to-hire claims under 42 U.S.C. § 1983 (Counts 6 through 10).  The amended complaint fails to state § 1983 claims upon which relief can be granted for the same reason; i.e., Yan has not alleged facts from which it could reasonably be inferred that she was qualified for the positions at issue.  Here again, we note that although Yan titled some of her counts (Counts 6 and 7) as both wrongful termination claims as well as failure-to-hire claims, her allegations with respect to those counts is that she was not hired while applicants who were not in her protected class were hired.  Thus, despite the title, the claims are really only failure-to-hire claims.

Further, as to Count 10, although Yan alleges that she was over 40 years of age and she "was denied her qualified PhD degree while the similar situated counterparts who were not in Yan's protected claims were granted PHD degree at PSU," *doc. 41-1* at 10, ¶¶67-68, she titled this count as a 42 U.S.C. §1983 failure-to-hire claim based on her age.  Given the focus of her amended complaint and the title of this claim, we do not construe the amended complaint as attempting to relitigate claims regarding the denial of her PhD, which was the subject of her prior cases.  Further, to the extent that she is complaining about employment discrimination because of her age, her exclusive remedy is a claim under the ADEA. *Hildebrand v. Allegheny Cty.,* 757 F.3d 99, 109-110 (3d Cir.

15

2014)(holding that the ADEA, which provides a comprehensive remedial scheme, precludes § 1983 claims of age discrimination in employment).

In sum, we conclude that Counts 1 through 10 of the amended complaint should be dismissed.  "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  Here, Yan has attached a proposed second amended complaint to her brief in opposition to the motion to dismiss.  She does not materially amend her allegations regarding the requirement of a PhD for the positions at issue and her lack of an actual PhD.  Accordingly, allowing Yan's proposed second amended complaint would be futile as to her failure-to-hire claims.

### C.  Pregnancy Discrimination Act.

In Count 11 of her amended complaint, Yan attempts to plead a claim under the Pregnancy Discrimination Act, which "makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Service, Inc.,* 135 S.Ct. 1338, 1343 (2015).  The Act "also says that employers must treat 'women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.'" *Id.* (quoting 42 U.S.C. § 2000e(k)).

According to Yan, in 2002, she informed PSU of her pregnancy and she "was delayed one year for her research assistant position" at PSU while males were not "delayed" for the same job. *Doc. 41-1* at 2, ¶7.  More specifically, she alleges that, in 2002, she was denied her lab work at PSU even though she qualified for lab-rotation jobs at Hershey Medical School while no male in the same situation was denied a lab-rotation job.  She further alleges that even after the birth of her child she was denied more than 20 labs assignments "for a year and two." *Id.* at 11, ¶75.  And she alleges that she "was keeping denying employment at Upenn afterward till now." *Id.* at 11, ¶78.  According to Yan, she had to send her baby away and could not get her baby back "since Upenn assuming her baby would affect her employment." *Id.*

To the extent that Yan is claiming that she was not hired in 2013 and 2014 because of her pregnancy in 2002, she fails to state a claim upon which relief can be granted.  She has failed to allege any facts to support an inference that she was not hired "because of or on the basis of pregnancy, childbirth, or other related medical conditions." *Saleski-Shingara v. VNA Health Systems,* No. 4:14-CV-00085, 2014 WL 5702928 at *8 (M.D.Pa. Nov. 5, 2014).  Further, one of the elements of a prima facie case of a pregnancy-discrimination claim is that the plaintiff was qualified for the position in question, *see Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 365 (3d Cir. 2008), and, as discussed above, Yan has not

17

alleged facts from which it could reasonably be inferred that she was qualified for the positions she applied for in 2013 and 2014.[6]

To the extent that Yan is a basing her pregnancy discrimination claim on events that happened in 2002 and shortly thereafter, the moving defendants contend such a claim is barred by the statute of limitations.

"Before beginning a Title VII suit, a plaintiff must first file a timely EEOC charge." *Lewis v. City of Chicago,* 560 U.S. 205, 210 (2010).  A claimant in a deferral state, such as Pennsylvania, must file an administrative charge within 300 days after the alleged unlawful employment practice occurred. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013); 42 U.S.C. § 2000e–5(e)(1) (providing "that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . .").  This time period is treated as a statute of limitations. *Burgh v. Borough Council of Montrose,* 251 F.3d 465, 470 & 475 (3d Cir. 2001).

---

[6] Similarly, to the extent that Yan is attempting to plead a "sex-plus" claim based on having a young child, such a claim is "merely a form of gender discrimination," one element of a prima facie case is that the plaintiff was qualified for the position, *see Saleski-Shingara*, 2014 WL 5702928 at *8-9, and Yan has not alleged facts from which it could reasonably be inferred that she was qualified for the positions at issue.

The statute of limitations is an affirmative defense and the burden of establishing its applicability rests with the defendants. *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989).  A motion to dismiss may be granted on the basis of the statute of limitations only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978)(motion to dismiss); 5A Wright & Miller, *Federal Practice and Procedure* §1368 (2d ed. 1990)("If the affirmative defense clearly is established in the pleadings, as, for example, when a statute of limitations defense is apparent on the face of the complaint and no question of fact exists, then a judgment on the pleadings may be appropriate.").

In this case, Yan does not appear to dispute that she did not file an administrative complaint within 300 days of the events in 2002 or shortly thereafter regarding purported discrimination based on her pregnancy.  Rather, she asserts in her brief that she filed a claim of gender discrimination in 2013 and, according to her, under the continuing-violation doctrine, her claim relating to 2002 is timely.

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of

actions which continues into the applicable limitations period.'" *Mandel*, 706 F.3d at 165 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* Thus, "[t]o allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165-66. The "focus 'is on affirmative acts of the defendants.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001)). Further, appropriate considerations in distinguishing continuing violations from isolated occurrences include the frequency of the alleged acts and the subject matter of the acts, i.e., "whether the violations constitute the same type of discrimination." *Mandel*, 706 F.3d at 166 n.2. Discrete acts, however, "such as termination, failure to promote, denial of transfer, or refusal to hire" constitute separate unlawful employment practices and cannot be aggregated into a hostile-environment claim. *Morgan*, 536 U.S. at 113-14.

Here, the problem with Yan's invocation of the continuing-violation doctrine is that, according to the allegations in the amended complaint, Yan has not been a student or employee at PSU since 2008, and there is simply no way that events that happened early in her career as student are sufficiently related under the continuing-violation doctrine to her claims that in 2013 and 2014 she was not hired for certain positions.  Moreover, a failure to hire is a discrete action that does not relate back to earlier actions.  Accordingly, we recommend that the Pregnancy Discrimination Act claim be dismissed as barred by the statute of limitations.[7]

### D.  18 U.S.C. § 2255.

In Count 12 of her amended complaint, Yan attempts to plead a claim for personal injury under 18 U.S.C. § 2255.  She alleges that Ho Li-Lun harassed her in the CDB program and that she suffered an injury to her hand.  Those allegations, however, are insufficient to state a claim under 18 U.S.C. § 2255, which provides the following:

> **(a) In general.**—Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States

---

[7] Given that recommendation, we need not address the moving defendants' contention that Yan failed to allege that she exhausted administrative remedies as to this claim.

District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

**(b) Statute of limitations.**—Any action commenced under this section shall be barred unless the complaint is filed within 10 years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability.

The statutory sections referred to in 18 U.S.C. § 2255(a) relate to peonage, slavery, and trafficking in persons, the sexual exploitation of children, child pornography, and the transportation of persons for illegal sexual activities. Yan's allegations have nothing to do with any of those subjects. Moreover, since Yan alleges elsewhere in her amended complaint that she is over 40 years of age, she obviously does not meet the statute's requirement of being a minor during the violation of any of the statutes listed in Section 2255. Accordingly, the amended complaint fails to state a claim under 18 U.S.C. § 2255 upon which relief can be granted. Granting Yan leave to amend would be futile.[8]

---

[8] In her proposed second amended complaint, Yan alleges that her child was abused by staff of a daycare on PSU's campus and that the Hershey Medical School failed to provide sufficient medical care. Yan's child, however, is not a plaintiff in this action. Moreover, Yan, appearing *pro se,* is not permitted to represent other parties, including her minor child. *Osei–Afriyie v. Med. Coll. of Pa.,* 937 F.2d 876, 882–83 (3d Cir.1991) (*pro se* litigant not permitted to represent his minor children). In her proposed second amended complaint, Yan also alleges that PSU violated 42 Pa.C.S.A. § 5524. That statute, however, merely sets forth a two-year statute of limitations for certain actions.

22

**E.  41 U.S.C. § 6503.**

In Count 13 of her amended complaint, Yan attempts to plead a claim under 41 U.S.C. § 6503, which deals with breach of terms required to be in a contract under 41 U.S.C. § 6502, which in turn deals with contracts "made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000."  Although Yan alleges that she had two employment contracts with PSU, which PSU allegedly breached, PSU is not an agency of the United States.  Moreover, because Yan's employment contracts are not the type of contracts addressed in §§ 6502 and 6503, the amended complaint fails to state a claim under § 6503 upon which relief can be granted. Leave to amend would be futile.[9]

**F.  Equal Pay Act.**

Finally, we address Yan's claim under the Equal Pay Act, which bars an employer from discriminating "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working

_____

[9] In her proposed second amended complaint, Yan alleges that she entered into two employment contracts with PSU and the Department of Homeland Security.  Still such employment contracts are not the type of contracts covered by §§ 6502 and 6503.

conditions," unless one of four affirmative defenses applies. 29 U.S.C. § 206(d). The four affirmative defenses are that the pay difference is based on: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.* Equal Pay Act Claims are analyzed using a two-step burden-shifting paradigm. *Stanziale v. Jargowsky,* 200 F.3d 101, 107 (3d Cir. 2000). First, the plaintiff must establish a prima facie case "by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Id.* If the plaintiff succeeds in establishing a prima facie case, the "burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act." *Id.*

Equal Pay Act claims are subject to a two-year statute of limitations except in the case of willful violations, which are subject to a three-year statute of limitations. 29 U.S.C. § 255(a). "A claim under the Equal Pay Act accrues each time an employee receives a paycheck paying him or her less than an employee of the opposite sex who performs equal work." *Prise v. Alderwoods Grp., Inc.,* 657 F.Supp.2d 564, 625 (W.D.Pa. 2009).

Yan alleges that, in 2007, Shi Yuguang and Leonard Jefferson wrongfully terminated her from a job. She alleges that this termination was in retaliation and

breached a six-year employment contract.  She also alleges that in 2007, she was

paid less than male colleagues.  More specifically, she alleges that she "was paid

less than male colleagues (Post doc) at PSU in 2007while [she] performed more

than common core duties as male colleagues (Post doc) such as scientific research

and published peer-review papers in 2007 to 2008." *Doc. 41-1* at 13, ¶14.  She

further alleges that although she "composited research proposals for NIH grants

fund application," she "was paid as pre-comprehensive exam graduate student

salary, which is less than male colleagues who did the similar duties." *Id.* at 13,

¶15.

Given that Yan alleges that she was last subject to unequal pay in 2007-

2008, and she did not begin this action until 2014, her Equal Pay Act claims are

barred by the statute of limitations.  Again Yan invokes the continuing-violation

doctrine.  But even where discriminatory conduct constitutes a continuing

violation, the statute of limitations still "begins to run on the date of the last

occurrence of discrimination." *Miller v. Beneficial Mgmt. Corp.,* 977 F.2d 834, 842

(3d Cir. 1992).  Here, based on Yan's allegations, she received her last allegedly

discriminatory paycheck more than three years before she filed this case.  Thus, the

continuing violation doctrine does not save Yan's claim from the statute of limitations.[10]

## G.  Individual Defendants.

The individual defendants have not been served and have not entered an appearance in this case.  Thus, they have not moved to dismiss the amended complaint.  Nevertheless, in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), the Court shall dismiss a case brought *in forma pauperis* if it fails to state a claim upon which relief may be granted.  The claims against the individual defendants, which are claims under 42 U.S.C. § 1983, fail for the same reasons set forth above as to the § 1983 claims against the moving defendants.  Moreover, personal involvement is a requirement as to any §1983 claim, *see Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009), and as to two of the individual defendants—Vasilatos-Younken and Paz— Yan has not made any factual allegations as to how they were personally involved in the alleged violation of her rights.  For this reason also the amended complaint fails to state claims against those defendants upon which relief may be granted.

---

[10]   Given the conclusion that the Equal Pay Act claims are barred by the statute of limitations, we need not address the moving defendants' argument that Yan failed to allege facts from which it could reasonably be inferred that she was paid less than males preforming the same job.

## IV.  Recommendations.

Based on the foregoing, it is recommended that the defendants' motion (doc. 44) to dismiss the amended complaint be granted, that all the claims in the amended complaint be dismissed, and that Yan not be given further leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of August, 2015.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge